IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Chapter 9 |
| CITY OF HARRISBURG, PA | Case No. 11-06938 |
| Debtor. | |

**BRIEF IN SUPPORT OF AFSCME DISTRICT COUNCIL 90'S OBJECTIONS TO THE CHAPTER 9 PETITION FILED ON BEHALF OF FOUR MEMBERS OF CITY COUNCIL**

Pursuant to section 921(c) of Title 11 of the United States Code ("Bankruptcy Code"), the American Federation of State, County and Municipal Employees, District Council 90 ("AFSCME" or "District Council 90") hereby files this brief in support of its objections to the Chapter 9 Petition filed on October 21, 2011 ("Petition") on behalf of four City Council members of the City of Harrisburg ("City").

I. PROCEDURAL HISTORY AND FACTS

The central fact behind the filing of the Petition is the poor financial condition of the City, and the political disagreement that problem has engendered amongst the Commonwealth of Pennsylvania ("Commonwealth"), the Honorable Governor Tom Corbett ("Governor"), the City Council of the City ("Council"), and the City's Honorable Mayor Linda D. Thompson ("Mayor") about the appropriate means to resolve the City's fiscal situation. Unfortunately, any solution to this problem puts at risk a number of other individuals and entities who do business or work for the City – the creditors and parties-in-interest in this matter if it should go forward.

1

As this case involves a municipality with hundreds of organized employees, among those creditors and interested parties are AFSCME and the nearly two hundred employees it represents who perform countless services on which the residents of the City have come to depend. AFSCME is the exclusive, certified bargaining agent of those employees, who work in the various departments and offices of elected officials of the City. Should this Petition be allowed to proceed, it is their livelihoods that will be at stake, as their rights under their current collective bargaining agreement may be at risk.

The financial problems of the City have been long known. Recognizing those problems, on December 15, 2010, the then Secretary of the Department of Community and Economic Development ("DCED") Austin Burke ("Secretary Burke") declared that the City was fiscally distressed under the Municipalities Financial Recovery Act, the Act of July 10, 1987, P.L. 246, No. 47 (as amended 53 P.S. §§ 11701.101-11701.501) ("Act 47"). Act 47 is a statute whose purported legislative goal is to place municipalities determined to be in poor financial shape on a proper fiscal footing. The chief mechanism for achieving this goal is the selection of a Plan Coordinator by the Secretary of the DCED who then writes an Act 47 Recovery Plan ("Recovery Plan") which, in turn, is subject to revision and approval by the legislative body of the municipality.

On January 12, 2011, Secretary Burke appointed an Act 47 team to act as the Plan Coordinator, which proceeded to prepare and release to the public a proposed

2

Recovery Plan for the City. On June 13, 2011, the Plan Coordinator presented for public comment its proposed Recovery Plan for the City.

While the public and elected officials of the City considered the Recovery Plan, on June 30, 2011, the Pennsylvania Legislature passed and the Governor signed Act 26 of 2011, 72 P.S. § 1601-D.1 (2011), which amended the Act of April 9, 1929 (P.L. 343, No. 176) (the "Fiscal Code"). The pertinent part of the amendment to the Fiscal Code, titled "Financially Distressed Municipalities," states:

> (a) SCOPE OF ARTICLE.-- This section applies to a city of the third class which is determined to be financially distressed under section 203 of the act of July 10, 1987 (P.L. 246, No. 47), known as the Municipalities Financial Recovery Act.
>
> (b) LIMITATION ON BANKRUPTCY.-- Notwithstanding any other provision of law, including section 261 of the Municipalities Financial Recovery Act [Act 47], no distressed city may file a petition for relief under 11 U.S.C. Ch. 9 (relating to adjustment of debts of a municipality) or any other Federal bankruptcy law, and no government agency may authorize the distressed city to become a debtor under 11 U.S.C. Ch. 9 or any other Federal bankruptcy law.
>
> (c) PENALTY.-- If a city subject to this section fails to comply with subsection (b), all Commonwealth funding to the city shall be suspended.
>
> (d) EXPIRATION.-- This section shall expire July 1, 2012.

72 P.S. § 1601-D.1 (2011).[1]

---

[1] The City is a Pennsylvania Municipal Corporation organized pursuant to the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 35101 *et seq.*, and operating pursuant to Mayor-Council Plan A ("Plan A") of the Optional Third Class City Charter Law, Act of July 15, 1957, P.L. 9-1, *as amended*, 53 P.S. § 41101 *et seq.*

3

On July 19, 2011, the seven-member elected Council voted against approval of the Act 47 Recovery Plan in a 4-3 vote, despite the declared support for that Recovery Plan by the City's Mayor. Pursuant to Act 47, Council's rejection of the Recovery Plan required the Mayor to present a revised Recovery Plan for Council's approval. Later, the Mayor presented a revised Recovery Plan to Council but, on September 13, 2011, Council voted against its approval in a similar 4-3 vote. The same four Council members who had voted against the original Recovery Plan voted against the revised Recovery Plan.

On October 11, 2011, these same four members of Council, by resolution, purportedly authorized the filing of a bankruptcy petition under Chapter 9 of the Bankruptcy Code on behalf of the City and purportedly retained attorney Mark D. Schwartz ("Attorney Schwartz") to file the petition. The Mayor neither authorized nor agreed to the filing of a bankruptcy petition or the hiring of Attorney Schwartz to do the same. In the late evening on the same day as the resolution was passed, Attorney Schwartz filed a petition under Chapter 9 of the Bankruptcy Code ("Petition") in the United States Bankruptcy Court for the Middle District of Pennsylvania on behalf of his clients, the four members of Council. The Petition names the City as the Debtor, but was signed by only one of the four members of Council.

On October 14, 2011, the Commonwealth filed an objection to the Petition on the ground that the City did not have the necessary state statutory authorization to file the Petition as required by Chapter 9 of the Bankruptcy Code. In fact, the

4

Case 1:11-bk-06938-MDF    Doc 76    Filed 10/28/11    Entered 10/28/11 13:49:28    Desc
Main Document    Page 4 of 13

Commonwealth argued, the City was expressly forbidden to do so by the recent amendment to the Fiscal Code. On October 16, 2011, the Mayor objected to the Petition on the grounds that Council does not have the legal authority to authorize or file a bankruptcy petition as such an action constitutes an executive action and the City's structure of government places all executive power in the hands of the Mayor.[2]

On October 19, 2011, following an emergency status conference in this matter, this Court issued an Order setting the following deadlines for filing objections and briefs: Objections and briefs in support are due October 28, 2011; responses to objections and briefs in support of those responses are due November 7, 2011; and reply briefs to those responses are due November 12, 2011. The Court also scheduled a hearing on the objections for November 23, 2011. Pursuant to this Order, AFSCME filed its Objections to the Petition and its supporting Brief to those Objections.

## II. ARGUMENT

The crux of AFSCME's Objections is that the four Council members did not have the necessary statutory authority under Chapter 9 of the Bankruptcy Code or the Optional Third Class Charter Law to file their Petition. Presumably, these four Council members filed the Petition to resolve the political disagreement amongst the Commonwealth, the Governor, Council, and the Mayor regarding the appropriate means

---

[2] On October 19, 2011, the Pennsylvania Legislature passed and, on October 20, 2011, the Governor approved an amendment to Act 47. The amendment contained a provision which delegated to the Governor the power to declare that a Third Class City is in a state of fiscal emergency, appoint a Receiver to address that fiscal emergency, and, if necessary, file for bankruptcy on behalf of the municipality. In no way did it amend the Fiscal Code's prohibition against the filing of a bankruptcy petition by Third Class Cities declared financially distressed under Act 47.

5

by which resolve the City's fiscal woes. However, this Court should avoid allowing these four Council members to use the Bankruptcy Code to resolve the City's fiscal difficulties because, as discussed in detail below, they lack the statutory authority to be in this forum in the first place.

### A. The City of Harrisburg Lacks the State Statutory Authority to File a Petition for Bankruptcy.

Section 921(c) of the Bankruptcy Code states that "[a]fter any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of this title." 11 U.S.C. § 921(c). The burden of proving eligibility to file under section 109(c) of the Bankruptcy Code is on the party filing the petition. *See Suntrust Bank v. Alleghany-Highlands Econ. Dev. Auth. (In re Alleghany-Highlands Econ. Dev. Auth.)*, 270 B.R. 647, 649 (Bankr. W.D. Va. 2001); *In re City of Bridgeport*, 129 B.R. 332, 339 (Bankr. D. Conn. 1991).

Chapter 9 of the Bankruptcy Code allows a municipal government to file for bankruptcy "if and only if" it meets certain eligibility criteria. 11 U.S.C. § 109(c). The criteria include an obligation that the municipality "is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 U.S.C. § 109(c)(2).

6

Prior to June 30, 2011, the Commonwealth had long granted its municipalities the authority to file for bankruptcy in certain limited circumstances through Act 47. Section 261 of Act 47 lists five potential circumstances under which a municipality would be allowed to file for bankruptcy. One of those circumstances is if "[a] majority of the current or immediately preceding governing body of a municipality determined to be financially distressed has failed to adopt a plan or to carry out the recommendations of the coordinator pursuant to this act." 53 P.S. § 11071.261(a)(5).

However, on June 30, 2011, the Pennsylvania Legislature passed and the Governor signed an amendment to the Fiscal Code that prohibits certain municipalities from filing for bankruptcy. The amendment first limits its scope to Third Class Cities who have been declared fiscally distressed under Act 47. 72 P.S. § 1601-D.1(a) (2011). Then it bars all such Third Class Cities from filing for bankruptcy. *Id.* at § 1601-D.1(b); *see* ¶ 10 of AFSCME's Objections. By its very terms, the amendment clearly and unambiguously prohibits Third Class Cities who have been declared distressed to file for bankruptcy.

Under Pennsylvania's Statutory Construction Act of 1972 ("Act"), 1 Pa.C.S. § 1501 *et seq.*, the primary rule of statutory construction "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). To achieve this goal, the Act makes clear that we first must effectuate the clear and unambiguous language of a statute. Section 1921 of the Statutory Construction Act states that "[u]nambiguous words control construction" and "when the words of a statute are clear

7

and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. " *Id.* at § 1921(b). The Pennsylvania Supreme Court has stated that "[w]hen a statute is unambiguous, the plain meaning of the statute shall control." *Reed v. Harrisburg City Council*, 995 A.2d 1137, 1141 (2010). It is only when the words of the statute are not clear that we look beyond the language at other indicia of legislative intent. "When the words of a statute are not explicit, the intention of the General Assembly may be ascertained [by looking beyond the actual words]." 1 Pa.C.S. § 1921(c).

With respect to the amendment to the Fiscal Code, the words of the statute are clear and unambiguous. The Pennsylvania Legislature expressly prohibited Third Class Cities who have been declared "distressed municipalities" under Act 47 from filing a bankruptcy petition at least until July 1, 2012. Currently, there are nine such Third Class Cities, including the City of Harrisburg, who fall under the purview of the statute's prohibition. Despite this prohibition, on October 11, 2011, four Council members (the four who opposed two versions of the Recovery Plan) filed the Petition in this matter, in derogation of the express language of the Fiscal Code. As the Commonwealth has expressly withheld legislative authorization for Third Class Cities which have been declared fiscally distressed from filing for bankruptcy, the Petition fails to meet one of the required eligibility criteria of Chapter 9.

8

For these reasons, the four Council members did not have the legislative authority to file a bankruptcy petition under Chapter 9, and, therefore, this Court must dismiss the Petition filed by Attorney Schwartz.

B. **The Four Members of Council Lacked the Legal Authority to File a Petition for Bankruptcy on Behalf of the City of Harrisburg.**

In addition to the Pennsylvania Legislature's express prohibition against the filing of a bankruptcy petition by a Third Class City that has been declared a "distressed municipality," the four Council members who initiated this action lacked authority to do so on behalf of the City under the Optional Third Class Charter Law. As a City operating under Plan A as outlined in the Optional Third Class City Charter Law, "the executive power of the [C]ity shall be exercised by the Mayor." 53 P.S. § 41411. The statute goes on to state:

> The [M]ayor shall enforce the charter and ordinances of the [C]ity and all general laws applicable thereto. [Sh]e shall, annually, report to the council and the public on the work of the previous year and on the condition and requirements of the city government and shall, from time to time, make such recommendations for action by the council as [s]he may deem in the public interest. [Sh]e shall supervise all of the departments of the city government, and shall require each department to make an annual and such other reports of its work as [s]he may deem desirable.

*Id.* at § 41412. In contrast, the Optional Third Class City Charter Law states that "[t]he legislative power of the city shall be exercised by the city council, except as may be otherwise provided by general law." *Id.* § 41407.

9

The Pennsylvania Supreme Court has recognized that the City operates as a Plan A Third Class City and, as such, all executive power rests with the Mayor who also is a governing municipal officer with ultimate authority in the City:

> We find the Mayor of Harrisburg -- a third class city operating under the mayor-council Plan A form -- is part of Harrisburg's government and one of the officers with ultimate control. The mayor is listed amongst the governing municipal officers. 53 P.S. § 41402; *see also Marcincin,* at 1325 (§ 41402 is a "mere recitation of municipal offices"). Plan A further vests "executive power of the city" in the mayor. 53 P.S. § 41411. Further, the mayor, with Council's advice and consent, appoints the heads of city departments and is permitted to remove department heads with notice to Council. *Id.,* § *41415(c).* Plan A thus establishes the mayor as a governing municipal officer and vests the city's executive power in him. The mayor is one of the "officers or persons having ultimate control" in a city operating pursuant to the mayor-council Plan A form. Black's Law Dictionary 715 (8th ed. 2004). As the mayor is part of Harrisburg's governing body, the mayor is entitled to appoint members of the [Harrisburg Authority] Board, with the advice and consent of Council.

*Reed,* 995 A.2d at 1142.

In considering the powers of a Mayor of a Third Class City operating under Plan A of the Optional Third Class City Charter Law, the Commonwealth Court of Pennsylvania has recognized that "only the Mayor can authorize legal action on behalf of the City and only the City Solicitor can initiate that action." *City of Erie v. Dept. of Envtl. Prot.,* 844 A.2d 586, 591 (Pa. Cmwlth. 2004). In *City of Erie*, the City Council attempted to authorize legal challenges to rulings by the Pennsylvania Department of Environmental Protection. Recognizing that the City of Erie operated under a Mayor-Council Plan A, the Commonwealth Court found:

> The Optional Plan that the electors of the City of Erie adopted was the "Mayor-Council Plan A" form of government. Rather than the

10

Case 1:11-bk-06938-MDF    Doc 76    Filed 10/28/11    Entered 10/28/11 13:49:28    Desc
Main Document    Page 10 of 13

> previous "commission" form of government that it had as a third class city, this form of government provided for a clear separation of the executive, i.e., the Mayor and the legislative, i.e., City Council, bodies. Specifically, the "legislative power" of the city "shall be exercised by the city council, except as otherwise may be provided by law." 53 P.S. § 41407. In addition, council retained the authority to "provide for the manner of appointment of a city solicitor," 53 P.S. § 41410(b), but was not expressly given the power to hire special counsel. The "executive power" of the city was to be exercised solely by the mayor," 53 P.S. 41411, and the mayor was authorized to "enforce the charter and ordinances of the city and all general laws applicable thereto." 53 P.S. § 41412. Although allowed to appear and participate before council, the mayor was no longer able to vote on matters before council but, instead, was granted the right to veto legislation. 53 P.S. § 41413(a)(b). In addition, the mayor was given the authority to appoint, with the consent of council, and remove, without the consent of council, department heads. 53 P.S. § 41415. Finally, the mayor was vested with the authority to execute "all bonds, notes, contracts and written obligations of the city." 53 P.S. § 41413(c).
>
> . . .
>
> Absent another authorization from those provisions, it is clear that under the "Mayor-Council Plan A" form of government, the executive power is vested solely in the Mayor, and the power to bring and commence lawsuits is vested solely in the City Solicitor.

*City of Erie*, 844 A.2d at 590-91.

As was the case in the *City of Erie*, the City of Harrisburg has adopted a Mayor-Council Plan A form of government in which the Mayor selects her City Solicitor. In fact, pursuant to the City Ordinances, "[t]he City Solicitor shall be appointed by the Mayor with the advice and consent of City Council." Harrisburg, Pa., Code, § 2-303. Thus, as in *City of Erie*, the Council here had no authority to authorize the filing of a bankruptcy petition or to hire legal counsel to do so. Additionally, even if the Council had such authority, the City Ordinances state that "all proposed bills or resolutions shall be presented to the City Solicitor for approval as to form and legality prior to

11

introduction." Harrisburg, Pa., Code § 1-201.1(d). Prior to passage of their resolution seeking to file a bankruptcy petition and hiring Attorney Schwartz, the four Council members never presented it to the City Solicitor for approval.

Because the four Council members did not have the authority under the Optional Third Class City Charter Law either to pass a resolution authorizing the filing of a bankruptcy petition or to hire an attorney to do so, and because they did not follow the proper procedure for passing their resolution, the Petition is a legal nullity and has no force. For these reasons, the Petition should be dismissed.

III.   CONCLUSION

The four Council members did not have the necessary legislative authority to file the Petition either under Chapter 9 requiring state authorization for a municipality to file a bankruptcy petition or under the Optional Third Class City Charter Law which places in the hands of the Mayor the authority to authorize the filing of a bankruptcy petition, where permitted, and to direct the City Solicitor to initiate such action. For these reasons, this Court should dismiss the Petition on the grounds that (1) it does not satisfy the eligibility criteria set out in Chapter 9 of the Bankruptcy Code and (2) Council did not have the authority to initiate the filing of such a bankruptcy petition under the Optional Third Class City Charter Law.

12

Date: October 28, 2011          WILLIG, WILLIAMS & DAVIDSON

By: /s/ Alaine S. Williams
Alaine S. Williams, Esquire
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA  19103
(215) 656-3600 (telephone)
(215) 561-5135 (fax)
awilliams@wwdlaw.com

Attorney for AFSCME, District Council 90

13

Case 1:11-bk-06938-MDF    Doc 76    Filed 10/28/11    Entered 10/28/11 13:49:28    Desc
Main Document    Page 13 of 13