IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: : CASE NO. 1:11-bk-06938 MDF
:
:
: CHAPTER 9
CITY OF HARRISBURG, PA :
:

# MEMORANDUM OF LAW OF THE COMMONWEALTH OF PENNSYLVANIA IN SUPPORT OF ITS OBJECTION TO THE DEBTOR'S PETITION

In support of its Objection to the Chapter 9 Petition of the City of Harrisburg, the Commonwealth of Pennsylvania ("Commonwealth") files this Memorandum of Law.

## I. INTRODUCTION

On October 12, 2011, the City of Harrisburg (the "Petitioner") filed a Voluntary Petition (the "Petition") for relief under section 109(c) of title 11 of the United States Code (the "Bankruptcy Code"). This Court should dismiss the Petition for two reasons: First, the Petitioner, as an agent of the Commonwealth, did not have specific authorization to become a debtor under Chapter 9 of the Bankruptcy Code.[1] Second, this Court should defer to the state legislature's policy of requiring financially distressed municipalities such as the Petitioner to utilize state procedures to return to fiscal health. Accordingly, this Court should dismiss the Petition.

---

[1] Although the Commonwealth authorized a Chapter 9 filing in the past, it expressly withdrew this authorization prior to the Petitioner's filing.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

Over a decade ago, the City of Harrisburg, with the admirable goal of turning trash into treasure, decided to overhaul its municipal incinerator to generate positive cash flow. (Ex. A at 3.) Rather than achieving its goal, however, the City of Harrisburg was confronted with cost overruns, project delays, and management problems that turned the project into a money pit. (*Id.*) With the passage of time, Harrisburg fell deeper and deeper into debt. Seeking state assistance, in October 2010, Harrisburg applied for status as a "financially distressed city." (Ex. A at 1.) In response to that plea for state help, on December 15, 2010, the Pennsylvania Department of Community and Economic Development ("DCED") declared Harrisburg a "financially distressed city." (Ex. A at 3.)

This designation allowed Harrisburg to take advantage of Pennsylvania's Municipalities Financial Recovery Act, commonly known as "Act 47." (*Id.*) The Pennsylvania legislature designed Act 47 to help financially struggling municipalities return to fiscal health, while protecting the health, safety, and welfare of all Commonwealth citizens. *See* 53 P.S. § 11701.102(a). Under Act 47, state-appointed financial consultants formulated a financial recovery plan to stabilize Harrisburg's finances. (Ex. A at 2.) However, Harrisburg's city council (the "Council") rejected this plan in July 2011. (*Id.*) After this rejection, the state legislature, exercising the Commonwealth's police power to protect the credit of the state, enacted a law prohibiting certain municipal bankruptcy filings through July 1, 2012. *See* 72 P.S. § 1601-D.1.

Rejection by the Council of the state-sponsored plan led Harrisburg's mayor, Linda Thompson (the "Mayor"), to formulate her own plan. (Ex. A at 2.) However, in August 2011, the Council rejected the Mayor's plan as well. (Ex. A at 3.) The Mayor submitted yet another

---

[2] Factual material was obtained from various news reports, attached hereto as Exhibit A.

plan in September 2011, only to see the Council, in just over two months, reject a third plan. (Ex A at 4.) Finally, on October 12, 2011, despite the clear statutory prohibition, the city of Harrisburg – by act of the Council and over the Mayor's public objection – filed a Voluntary Petition under Chapter 9 of the Bankruptcy Code. The Commonwealth's objection followed.

### III. ARGUMENT

#### A. Petitioner is a creature of the Commonwealth.

Municipalities are "merely . . . creature[s] of the sovereign." *City of Pittsburgh v. Commonwealth*, 535 A.2d 680, 682 (Pa. Commw. Ct. 1987). They are "created, governed, and the extent of their powers determined by the legislature, and subject to change, repeal, or total abolition at its will. They have no vested rights in their offices, their charters, their corporate powers, or even their corporate existence." *Commonwealth v. Moir*, 49 A. 351, 352 (Pa. 1901). They are "fully subject to the control of the legislature, who may enlarge or diminish . . . [their] functions . . . or destroy [their] very existence . . . ." *Philadelphia v. Fox*, 64 Pa. 169, 180 (Pa. 1870). In short, the state has almost unfettered control over its municipalities, which are mere "agents of the state" and are subject to the state's control. *See Moir*, 49 A. at 352.

This sovereign authority and principles of federalism demand that to file for bankruptcy, a municipality must have specific authorization from the State.

#### B. Petitioner did not and does not have specific authorization from the Commonwealth to file for bankruptcy.

In deference to the sovereign power of states to control their own internal affairs, including the actions of their municipalities, Chapter 9 of the Bankruptcy Code limits filing for relief to instances where the municipality is "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter . . . by State law. . . ." 11 U.S.C. § 109(c)(2). The burden of proving specific authorization to file rests with the Petitioner. *See In re City of Bridgeport*, 129 Bankr. 332, 339 (Bankr. D. Conn. 1991).

The Petitioner incorrectly claims to find such authorization in Act 47. Although it is true that Act 47 authorizes municipalities that meet certain requirements to file for bankruptcy, the Petitioner may not ignore a statute that subsequently withdraws that authorization. It is undisputed that a state's power to grant consent includes the converse power to deny consent. *See, e.g., United States v. Bekins*, 304 U.S. 27, 47 (1938). The Commonwealth denied consent with the passage of 72 P.S. § 1601-D.1 ("Anti-Bankruptcy Law"), attached hereto as Exhibit B. The Anti-Bankruptcy Law expressly supersedes Act 47 and expressly denies authorization for third-class cities in the Commonwealth – including Harrisburg – to file for bankruptcy. It reads in full:

> (a) SCOPE OF ARTICLE.-- This section applies to a city of the third class which is determined to be financially distressed under section 203 of the act of July 10, 1987 (P.L. 246, No. 47), known as the Municipalities Financial Recovery Act.
>
> (b) LIMITATION ON BANKRUPTCY.-- **Notwithstanding any other provision of law, including section 261 of the Municipalities Financial Recovery Act, no distressed city may file a petition for relief under 11 U.S.C. Ch. 9** (relating to adjustment of debts of a municipality) or any other Federal bankruptcy law, and no government agency may authorize the distressed city to become a debtor under 11 U.S.C. Ch. 9 or any other Federal bankruptcy law.
>
> (c) PENALTY.-- If a city subject to this section fails to comply with subsection (b), all Commonwealth funding to the city shall be suspended.
>
> (d) EXPIRATION.-- This section shall expire July 1, 2012.

72 P.S. § 1601-D.1(emphasis added).

By its clear terms, the Anti-Bankruptcy Law deprives the Petitioner of the Commonwealth's authorization to file a bankruptcy petition. Harrisburg is a city of the third class that DCED declared "financially distressed" on December 15, 2010. *See* Resolution of City of Harrisburg, dated October 11, 2011, attached hereto as Exhibit C. Accordingly, the Petitioner may not file a petition for relief under Chapter 9 of the Bankruptcy Code at any time between June 30, 2011 (when the law became effective) and July 1, 2012 (when the prohibition

against bankruptcy is set to expire). When the Petitioner filed the Petition on October 12, 2011, it did so not only with a lack of specific affirmative authorization, but also in contravention of an express prohibition. Because state law does not specifically authorize the Petition as required by section 109(c)(2) the Bankruptcy Code, this Court must dismiss the Petition.

### C. As a matter of federalism, this Court must defer to the Commonwealth's policy of requiring financially distressed municipalities such as the City of Harrisburg to utilize state procedures.

Bankruptcy courts have always been "keenly aware of the federalism concerns that permeate Chapter 9 bankruptcy cases." *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 146 (Bankr. S.D.N.Y. 2010). In *Ashton v. Cameron County Water Improvement Dist. No. 1*, 298 U.S. 513, 532 (1936), the Supreme Court struck down Congress' initial attempt to fashion a municipal bankruptcy statute. There the Court held the law to be in violation of the Tenth Amendment because it allowed municipalities, as creatures of the state, to file for bankruptcy absent state consent. Mindful of this result, when Congress wrote the current municipal bankruptcy law, it included language to ensure that Chapter 9 "does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State . . . ." 11 U.S.C. § 903. This provision, in conjunction with 11 U.S.C. § 904, recognizes a bankruptcy court's limited powers when dealing with entities created and controlled by a state sovereign.

Congress has made it clear that Federal courts may "abstain[] from hearing a particular proceeding . . . under [the Bankruptcy Code]" when doing so is "in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(a); *see also R.R. Comm'n of Tex. v. Pullman*, 312 U.S. 496, 501 (1941). This respect for state sovereignty is particularly amplified in Chapter 9 cases, as reflected in the threshold eligibility criteria of section 109(c) of the Bankruptcy Code.

Here, the Petitioner has commenced a case under Chapter 9 of the Bankruptcy Code that Pennsylvania law prohibits and the Commonwealth of Pennsylvania opposes. The Commonwealth requires its financially troubled municipalities to use state procedures under Act 47. The Commonwealth recently has reaffirmed this decision by strengthening state control over financially distressed municipalities and further emphasizing that municipalities are limited in their ability to file for Chapter 9. *See* Act 2011-79 (S.B. 1151)(amending Act 47, and allowing the Governor to control a city's finances and appoint a receiver in times of "fiscal emergency.") ("Act 47, as amended"), attached hereto as Exhibit D.[3] Accordingly, this Court should dismiss the Petition.

## IV. CONCLUSION

For the reasons set forth above, this Court should grant the Commonwealth's Objection and Dismiss the Petition.

Respectfully submitted,

/s/ Neal D. Colton
Neal Colton, Esquire (PA ID#02729)
ncolton@cozen.com
Jeffrey G. Weil, Esquire (PA ID#23902)
jweil@cozen.com
Stephen Miller, Esquire (PA ID#308590)
samiller@cozen.com
Eric L. Scherling, Esquire (PA ID#87925)
escherling@cozen.com
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000

Attorneys for Commonwealth of Pennsylvania

Dated: October 28, 2011

---

[3] On October 24, 2011, the Honorable Tom Corbett, Governor of the Commonwealth of Pennsylvania determined, pursuant to Act 47, as amended, that a fiscal emergency exists in the City of Harrisburg and directed the Secretary of Community and Economic Development, pursuant to the Declaration of Fiscal Emergency attached as Exhibit E, to develop an Emergency Action Plan, as prescribed by Act 47, as amended.